IONA SUTTON LANE-BURSLEM, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 934–75.     Filed August 22, 1979.

---

*Robert E. Falb*, for the petitioner.
*Thomas F. Kelly* and *Mary V. Harcar*, for the respondent.

SUPPLEMENTAL OPINION

IRWIN, *Judge:* This case is before us on petitioner's motion for reconsideration of our opinion in *Lane-Burslem v. Commissioner*, 70 T.C. 613, filed August 3, 1978. The issue before us there was whether one-half of petitioner's salary earned while she was employed in England by the United States Department of Defense should be treated as her spouse's income under Louisiana community property laws, and, therefore, exempt from United States income taxation because her spouse was a nonresident alien and the income was from foreign sources.

In our original opinion, we held that it would be necessary for both the husband and wife to have their domiciles in Louisiana in order to create a marital community in which both spouses would share in the earnings of the Louisiana domiciliary.[1] See La. Civ. Code Ann. arts. 2334, 2401, 2402,[2] and 136 (West 1971). Petitioner argues that under our original opinion, assuming she is entitled to a Louisiana domicile,[3] she would still have to prove

---

[1]Under Louisiana property law, a claim for wages of a wife who is living with her husband belongs to the community. La. Civ. Code Ann. arts. 2334, 2402 (West 1971). *Martin v. Ethyl Corp.*, 341 F.2d 1 (5th Cir. 1965); *Fazzio v. Krieger*, 226 La. 571, 76 So. 2d 713 (1954); *DeMaupassant v. Clayton*, 214 La. 812, 38 So. 2d 791 (1949); *Houghton v. Hall*, 177 La. 237, 148 So. 37 (1933); *Succession of Howell*, 177 La. 276, 148 So. 48 (1933). In all these cases, both the wife and husband were domiciled in Louisiana, i.e., the marital domicile was Louisiana.

[2]As in effect during the years in issue. Louisiana has adopted sweeping changes in its community property laws. See Acts 1978, No. 627 (relating generally to equal management of property by spouses). Sec. 6 repealed tit. VI, Vol. III, La. Civ. Code, comprised of arts. 2325 through 2437. Sec. 9 of Act 627 provides in pertinent part that "Except for R.S. 9:2831 through 2835, Section 1, Section 2, Section 6, Section 7, and Section 8 of this Act shall take effect on January 1, 1980, and shall be applicable to the property and obligations of all spouses whether the spouses were married or whether property was acquired or an obligation was incurred prior to or after January 1, 1980, unless the spouses have adopted a matrimonial regime by express contract."

[3]We realize that the modern trend is to recognize separate domiciles for a husband and a wife if in fact they are residing in and intend to maintain separate domiciles and both parties agree. *Wilson v. Pickens*, 444 F. Supp. 53 (W.D. Okla. 1977); *Napletana v. Hillsdale College*, 385 F.2d 871 (6th Cir. 1967). We are also aware of at least one case in which it was held that the Equal Protection Clause of the 14th Amendment requires that a wife be capable of acquiring a domicile separate from that of her husband if there has been an actual rupture of marital relations even though the wife is at fault or if the wife is living apart from her husband even though her relations with him are wholly amicable. *Spindel v. Spindel*, 283 F. Supp. 797, 813 (E.D. N.Y. 1968).

that her husband is also domiciled in Louisiana in order to obtain the benefits of community property, but that the converse is not true. That is, a man domiciled in Louisiana is not required to establish that his wife is also domiciled there. Instead, by reason of Louisiana Civil Code Annotated article 39, the wife by operation of law takes the domicile of her husband, so that the marital community is always at the place of the husband's domicile.

The issue presented to us by petitioner on this motion is whether the laws of Louisiana, which deny petitioner a domicile in Louisiana and the benefits of that State's community property law, are constitutional under the Equal Protection Clause of the 14th Amendment and the Due Process Clause of the 5th Amendment.

Petitioner argues that we need not determine whether her husband has a property right in her income in the event we hold Louisiana Civil Code Annotated article 39 unconstitutional.[4] It is her position that under Louisiana law, a woman in the situation that her husband was in during the years in issue would obtain a property right in income (due to the operation of article 39) and

---

We expressed some doubt, however, in our original opinion at n. 3 that Louisiana would permit a wife living amicably with her husband to maintain a separate domicile. See *Welsh v. Welsh*, 322 So. 2d 352 (La. App. 1975); *Du Verney v. Ledbetter*, 61 So. 2d 573 (La. App. 1952).

We also noted at n. 3 that there were no special circumstances (as that term has been applied by the Restatement of Conflict of Laws and the courts) that make it unreasonable for petitioner to take her husband's domicile by operation of law. See *Martin v. Hefley*, 533 S.W.2d 521 (Ark. 1976); *Simpson v. Simpson*, 339 So. 2d 250 (Fla. Dist. Ct. App. 1976); *Bowers v. Bowers*, 287 So. 2d 722 (Fla. Dist. Ct. App. 1973); *Ashmore v. Ashmore*, 251 So. 2d 15 (Fla. Dist. Ct. App. 1971); *Glassman v. Glassman*, 75 Ohio App. 47, 60 N.E.2d 716 (1944); *Berlingieri v. Berlingieri*, 373 Ill. 60, 22 N.E. 675 (1939); *Spielman v. Spielman*, 144 Wash. 421, 258 P. 37 (1927). See also *Commonwealth of Virginia v. Rutherfoord*, 160 Va. 524, 169 S.E. 909 (1933).

Petitioner's argument, as we understand it, is that she has met the test for retaining her Louisiana domicile absent her marriage to Eric and that upon finding art. 39 unconstitutional, we must use the test which applied in the absence of her marriage. In n. 2 of our original opinion, we stated that petitioner showed that she had a fixed intent to return to Louisiana (her domicile of origin) and that under *District of Columbia v. Murphy*, 314 U.S. 441 (1941), this fixed intent would have been sufficient for her to retain her Louisiana domicile (absent her marriage).

[4]The Louisiana Supreme Court in *Craig v. Craig*, —La. —, 365 So. 2d 1298 (1978), held art. 39 unconstitutional for purposes of determining domicile for venue requirements. The case is distinguishable since the court limited its decision to the issue before it which "in no way reasonably related to the marital obligations mutually owed by the husband and the wife." The court noted further that the classification was not adopted as part of the overall "pattern of laws designed to protect the marriage, home and family" and its sole effect was to afford the husband a procedural advantage. The issue of property rights rests at least in part upon the wife's obligation to live with her husband and the husband's obligation to provide her a home, and is directly dependent upon the marital rights and duties the spouses owe each other. Thus, we agree with respondent that *Craig* is distinguishable (nor does petitioner contend otherwise).

that she is, therefore, entitled to the same treatment upon a finding that the law is unconstitutional.[5]

While we agree with petitioner that she need not show that she would ultimately prevail in her lawsuit in this Court in order to have standing to challenge the constitutionality of the Louisiana statute (*Orr v. Orr*, 440 U.S. 268 (1979)), we do not believe she is necessarily entitled to the relief she seeks upon a showing that the statute is unconstitutional.[6] We believe that we must decide, assuming that Louisiana Civil Code Annotated article 39 is unconstitutional, whether petitioner is entitled on other grounds of gender-neutral State law to the benefits of community property. Nothing in *Orr v. Orr, supra,* is to the contrary. The Court specifically noted that declaring a State statute unconstitutional often does not resolve the controversy between the parties. Rather, the cause must be remanded to the State courts for further proceedings. Since we cannot remand

---

[5]It is not entirely clear that under this fact pattern, with the roles of petitioner and her spouse exchanged, that Louisiana would have granted a woman a property right in her husband's property, although both petitioner and respondent have assumed this to be so. In *Succession of McKenna*, 23 La. Ann. 369 (1871), it was held that the wife was entitled to a share of her husband's property where the husband married overseas and then shortly thereafter returned to Louisiana, although the wife never resided in Louisiana. This was so because the husband's domicile was Louisiana and, therefore, by operation of law, the wife took the husband's domicile. Had the husband never returned to Louisiana, it is not at all certain that the wife would have had a property right in her husband's income earned while he was overseas. This is because, as noted earlier, under Louisiana law a wife is obligated to live with her husband and, where a husband provides his wife with a home in Louisiana in which she is to reside, it is not unreasonable (accepting for the moment the law's validity) to provide her with a Louisiana domicile. Where no home is expected to be provided the wife in Louisiana for as long as 15 years, some doubt exists as to whether Louisiana would require the wife to take a Louisiana domicile and be subject to both the benefits and burdens of its property laws. See also *West v. United States*, 220 Ct. Cl. — (1979), 44 AFTR2d 79–5094, 79–2 USTC 9413. That case involved a situation similar to the one in this case. The Court of Claims there noted, in dealing with Spanish law:

"None of these classes includes what we now have before us—husband and wife domiciled in different places (Kansas and Spain), residing in one place (Spain), which is also the jurisdiction where the money was earned. In that situation it may be that the law of the earner's own domicile (Kansas) determines ownership (see Restatement (Second) of Conflicts +BB 258, comment c) but it also may be that Spain has the more significant relationship to the spouses and to the earnings—and therefore that its internal law should prevail on ownership. See Restatement (Second) of Conflicts, +BB 258(1). We need not try to solve that problem *in vacuo* because it is likewise a recognized precept that in any event the situs state—the place where the income was earned or the movable was acquired—can determine the marital interests by its own law if it affirmatively seeks to do so. See R. Leflar, American Conflicts Law (1968) +BB 235 at 565; H. Goodrich, Handbook of the Conflict of Laws +BB 124 at 252 (4th ed. Scoles editor, 1964)."

See also *Zaffaroni v. Commissioner*, 65 T.C. 982, 988 (1976).

[6]Cf. *Boyer v. Commissioner*, 69 T.C. 521, 534 (1977), on appeal (2d Cir., July 2, 1979). The taxpayer there argued that sec. 1.107–1(b), Income Tax Regs., pursuant to which this Court denied him a ministerial rental exclusion, was unconstitutional. We did not reach the constitutional argument. Rather, we held that the argument was self-defeating: if we concluded sec. 107 was unconstitutional, it would lead to the disallowance of the exclusion sought.

this case to the State courts, but must instead determine State law, we believe it is unnecessary to reach the constitutional issue unless petitioner would prevail upon a finding that the law is unconstitutional.[7]

In this regard, petitioner contends that the constitutional infirmity (if there is one) would be resolved by Louisiana granting to either spouse the ability to take his or her own domicile and that the nonresident and nondomiciliary spouse would have a community property interest in the Louisiana domiciliary spouse's property. If this were the case, petitioner would prevail, assuming she maintained a separate, Louisiana domicile.

We disagree. The rationale underlying Louisiana Civil Code Annotated article 39, that the domicile of the wife is that of her husband, is that under Louisiana law a wife is bound to live with her husband.[8] La. Civ. Code Ann. art. 120 (West 1971). See also *Self v. Self*, 228 So. 2d 518 (La. App. 1969). The husband has a concomitant duty to provide a home for the wife and support her. La. Civ. Code Ann. art. 120 (West 1971). Because the law casts upon the wife the duty to take her husband's domicile, it invests her with correlative rights, one of which is to share in the earnings of her husband so long as the community is not disrupted. But the law does not impose upon the husband, at least ordinarily, the obligation to take the domicile of his wife.[9] For that reason, the husband does not take the same concomi-

---

[7]It is well established that a court will refrain from deciding a constitutional issue where other reasons can be found for the decision. *Alexander v. Louisiana*, 405 U.S. 625 (1972).

[8]The wife's obligation to live with her husband must be construed with the right of the wife to put an end to the matrimonial relation for any causes listed in La. Civ. Code Ann. art. 138 (West 1971). *Cuny v. Cuny*, 146 La. 711, 83 So. 906 (1920). In this regard, an unwilling wife cannot be compelled to live with her husband, and all the law does is denounce the refusal of the wife to live with her husband as an abandonment and allow a separation from bed and board. *Latham v. Latham*, 216 La. 791, 44 So. 2d 870 (1950). When a wife is no longer obligated to live with her husband, the matrimonial domicile is extinguished and she may choose her own domicile.

[9]In situations in which there is a conflict between the domicile of the husband at the time of marriage and that which the parties intend to permanently adopt at the time of marriage and in which they take up their residence, Louisiana courts have sometimes provided the wife (and husband) with a domicile other than the husband's domicile at the time of marriage. See *Arendell v. Arendell*, 10 La. Ann. 566 (1855); *Hayden v. McNutt*, 4 La. Ann. 65 (1849); *Fisher v. Fisher*, 2 La. Ann. 774 (1847); *Ford's Curater v. Ford*, 2 Mart. (n.s.) 514 (La. 1824); *LeBraten v. Nouchet*, 3 Mart. 60 (La. 1813). We have found in this case that there was no intention to move to a domicile other than the husband's at the time of the marriage. As we found in our original opinion, petitioner's husband had no fixed intent to move to Louisiana at the time of the marriage and neither party consciously selected a matrimonial domicile at that time under whose laws they would be subject. It was not until 2 years after they were married, at the earliest, that they formed a joint intent to go to Louisiana at the time when petitioner would retire, some 15 years later.

tant or correlative rights as the law confers upon the wife. The wife, who must accept the burden of her husband's domicile, is accorded the benefits that attach to such domicile, but the husband, not being required to accept the wife's domicile, is not in the same position as to benefits that inure to the wife in the domicile of her husband. See *Payne v. Commissioner*, 141 F.2d 398, 403 (5th Cir. 1944) (Judge Waller concurring).

If we reject as unconstitutional the rule that the wife's domicile is that of her husband by operation of law, it would seem to follow that she should not automatically obtain the benefit of owning a half-interest in her husband's earnings since the rationale for providing her with that benefit no longer exists. It is clear that the husband, who does not take his wife's domicile, does not receive the benefits of his wife's domicile. We believe on this basis that if Louisiana Civil Code Annotated article 39 is unconstitutional as it relates to determining property rights, the Louisiana courts would deny a wife, residing in a common law property State apart from her husband (and retaining her own domicile) a one-half interest in her husband's property. Under this system, then, the rights of the husband and wife would be parallel, that is, neither a husband nor a wife has a community property interest in the property of the other spouse where the spouse has a domicile apart from his or her husband or wife.[10] This is consistent with the holding in our original opinion (70 T.C. 620–621) in which we interpreted Louisiana Civil Code Annotated article 2401 to mean that in the absence of both spouses having their domiciles in Louisiana, there is no marital community upon which basis the non-Louisiana domiciliary would have a community property interest

---

[10]We note that under La. Civ. Code Ann. art. 2334, the earnings of the wife when living separate and apart from her husband even though not judicially separated are deemed her separate property and not part of the community. See *Jarred v. Jarred*, 355 So. 2d 566 (La. App. 1978). On the other hand, the earnings of a Louisiana-domiciled husband are considered community property where his wife is living separate and apart from him as long as the community exists. See La. Civ. Code Ann. art. 2402 (West 1971). If petitioner's contention that art. 39, in relation to property rights, is unconstitutional is correct, it would also appear to undermine the dissimilar treatment afforded the wife under arts. 2334 and 2402. So, too, the designation of the husband as administrator of the community regime (La. Civ. Code Ann. art. 2404), would be called into question. But see *Kirchberg v. Feenstra*, 430 F. Supp. 642 (E.D. La. 1977): La. Civ. Code Ann. arts. 2334 and 2404 were not unconstitutional as denying equal protection to the extent they permitted husband to mortgage property held in joint names of both spouses without wife's consent. (Statutes amended by La. Acts 1976, No. 679 to provide that wife's consent is necessary, effective Jan. 1, 1977.) See also Acts. 1978 No. 627.

See G. Bilbe, "Constitutionality of Sex-Based Differentiations in the Louisiana Community Property Regime," 19 Loy. L. Rev. 373 (1971).

in the earnings of the Louisiana domiciliary. This statute is gender-neutral and under the facts in this case, we held in our original opinion that petitioner's husband would not take a Louisiana domicile assuming arguendo that petitioner retained her Louisiana domicile.[11] Therefore, petitioner's husband does not have a property right in petitioner's income.

In short, we do not believe that under any interpretation of Louisiana law, whether article 39 is constitutional or unconstitutional, petitioner's husband would have a property interest in petitioner's income. This is so because we have determined that, absent Louisiana Civil Code Annotated article 39, petitioner's marital domicile would be England, the domicile of her husband (on a factual, rather than legal basis); or alternatively, if petitioner retained a separate, Louisiana domicile, her husband would retain his domicile in England with no legal basis for a community interest in her income. For this reason, we do not need to decide the constitutional question. We again hold for respondent on this issue.

*Decision will be entered under Rule 155.*

---

[11]In the event art. 39 is unconstitutional in regard to property rights, another alternative to finding that a wife may take a domicile separate from her husband (while living amicably together) would be to hold that the couple has only one domicile but that it is necessary to look to the facts and circumstances of the couple, in a gender-neutral manner, to determine where the marital domicile is. We held in our original opinion that under such a theory, the marital domicile would be England.